# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES GILBERT ANTHONY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:22CV562 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff James Gilbert Anthony, Jr. brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB") and a period of disability ("POD"). The Court has before it the certified administrative record, Plaintiff's motion for judgment, and Defendant's dispositive brief.

## I. PROCEDURAL HISTORY

In 2020, Plaintiff filed an application for a POD and DIB alleging a disability onset date of April 5, 2018. (Tr. 244-49.)[1] The application was denied initially and again upon reconsideration. (Tr. 118-26, 130-37.) After an administrative hearing, the ALJ determined in November of 2021, that Plaintiff was not disabled under the Act. (Tr. 15-77.) On May 19, 2022, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision for purposes of review. (Tr. 1-6.)

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520.[2] *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). At step one, the ALJ found that Plaintiff

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

2

had not engaged in substantial gainful activity since April 5, 2018, the alleged onset date. (Tr. 17.) The ALJ next found the following severe impairment(s) at step two: degenerative disc disease of the lumbar spine; degenerative joint disease of the knees bilaterally; diabetes mellitus with neuropathy; and hypertension. (Tr. 17.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 19.) The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that he could perform light work, "except he can occasionally stoop; frequently kneel, crouch, and crawl; and can tolerate frequent not constant exposure to workplace hazards such as unprotected heights and dangerous machinery." (Tr. 20.) At the fourth step, the ALJ determined that Plaintiff could perform his past relevant work as a security guard and a gate guard. (Tr. 25.)

**IV. ISSUES AND ANALYSIS**

Plaintiff raises two objections. First, he contends that "[t]he RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of Anupama Ha, M.D." (Docket Entry 11 at 8.) Second, Plaintiff contends that "[t]he ALJ's RFC determination is the product of legal error where, after concluding that Plaintiff had various mild mental limitations in functioning, the ALJ failed to incorporate any mental limitations without adequate explanation." (*Id.*) As explained in greater detail below, these are not persuasive objections.

**A. Opinion Evidence**

. First, Plaintiff contends that "[t]he RFC determination is not supported by substantial

3

evidence because the ALJ failed to properly evaluate the opinion of Anupama Ha, M.D." (Docket Entry 11 at 8.) This objection is not persuasive.

The longstanding requirements calling for adjudicators to weigh medical opinions and give special deference to treating source opinions have changed. *See* 20 C.F.R. § 404.1520c(a) (effective March 27, 2017). Now, adjudicators "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* Nevertheless, an ALJ must consider and articulate in the administrative decision how persuasive he or she finds each medical opinion or prior medical finding in a claimant's case record. *See id.* § 404.1520c(b). When a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings as a class. *See id.* § 404.1520c(b)(1). In doing so, the ALJ is "not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

In evaluating persuasiveness, the ALJ must articulate two factors: supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. *Id.* § 404.1520c(c)(1); *see also Revisions to Rules*, 82 Fed. Reg. at 5853. Consistency is an external check that references evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2); *see also Revisions to Rules*, 82 Fed. Reg. at 5853. The ALJ must only address the three other persuasiveness factors—relationship with the claimant, specialization, and the catchall "other factors"—when two or more medical opinions, or prior administrative medical findings about

4

the same issue, are equally persuasive in terms of supportability and consistency. *Id.* § 404.1520c(b)(3).

Furthermore, "[s]tatements that [claimants] are or are not disabled, . . . able to work, or able to perform regular or continuing work," are statements on an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3). Under the revised regulations, statements on issues reserved to the Commissioner are deemed evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 404.1520b(c)(1)-(3). The regulations also make clear that, for such claims, "we will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c).

In the present case, in February of 2021, Dr. Ha opined that Plaintiff's symptoms were severe enough to place him off-task for 15 percent of the workday and to cause him to be absent 4 days per month. (Tr. 664.) She further opined that Plaintiff could frequently lift less than 10 pounds, occasionally lift 10 pounds, and rarely lift more; he could sit, stand, or walk three hours each per day and required a sit/stand option; he could frequently reach, handle, finger, feel, push, and pull bilaterally; he could rarely climb stairs, ramps, ladders, and scaffolds; he could rarely balance, stoop, kneel, crouch, crawl, and rotate his head and neck; he could occasionally be exposed to humidity and wetness; and he could rarely be exposed to unprotected heights, moving mechanical parts, pulmonary irritants, extreme temperatures, and vibrations. (Tr. 665-67.) Dr. Ha affirmed this opinion in March 2021, adding that Plaintiff would need to lie down or recline every two hours, two to three times per day. (Tr. 709-12.)

5

The ALJ assessed Dr. Ha's opinions as follows:

> Dr. Ha's opinions found at Exhibits 10F and 12F are less persuasive for several reasons. Specifically, Dr. Ha opined the claimant would be off task for 15% of the working day and would miss 4 or more days of work but did not provide adequate explanation in support of these significant limitations. Additionally, Dr. Ha opined the claimant could frequently lift ten pounds and rarely lift up to 10[] pounds as well as sit, stand, and walk for three hours each in an eighthour working day, but other than noting his spinal injections, provided no other explanation or objective findings to support these limitations. (Exhibits 10F; 12F). Further, Dr. Ha included no explanation to support her proscribed postural, manipulative, and environmental limitations. It is also noteworthy that Dr. Ha indicated the claimant does not need an assistive device to ambulate. Further, in addition to the little explanation found within the opinions, the extent of her proscribed limitations is also inconsistent with her own treatment notes, as they include very few longitudinal objective findings including no findings of gait abnormalities or positive straight leg raises. (E.g. Exhibits 11F; 13F). She is also not a spinal specialist and there is no indication he has presented to one consistently during the time period at issue.

(Tr. 24, 663-819.)

Here, the ALJ reasonably relied on the medical evidence to find Dr. Ha's extreme limitations unpersuasive (Tr. 24). In particular, as the ALJ explained, Dr. Ha did not provide any explanation or support for the limitations that Plaintiff would be off task for 15% of the working day and would miss four or more days of work. (Tr. 24, 664, 709.) Likewise, Dr. Ha provided very little explanation or support for her opinion limiting Plaintiff to three hours of sitting, standing, and walking, and the lifting and carrying restrictions, beyond noting that Plaintiff had an MRI of his cervical and lumbar spine and had spinal injections. (Tr. 665, 710.) However, a diagnosis alone does not establish a severe impairment; "[t]here must be a showing

of related functional loss." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); *see also Pritchett v. Saul*, No. CV 9:19- 1070-DCN-BM, 2020 WL 6264906, at *5 (D.S.C. Mar. 5, 2020) ("A diagnosis alone, however, does not demonstrate disability.") (citation omitted). Also, as the ALJ explained, Dr. Ha provided no support for her postural, manipulative, and environmental limitations. (Tr. 24, 666-67, 711-12.)

The ALJ further explained that Dr. Ha's opinions were inconsistent with her own treatment records that showed no finding of gait abnormalities or positive straight leg raises, but rather consistently had full range of motion, no focal defects, grossly intact cranial nerves, and normal deep tendon reflexes. (Tr. 24, 437, 442, 446, 450, 452, 459, 471, 623, 784.) The ALJ further noted that Dr. Ha's opinions were also inconsistent with findings at the emergency room that Plaintiff had normal coordination, full range of motion, negative straight leg raises, normal sensation in his lower extremities, 5/5 strength, normal deep tendon reflexes, and he ambulated without difficulty or assistance. (Tr. 22, 361, 464, 484-85.)

Dr. Ha's opinions were also inconsistent with the consultative examiner, Dr. Silvestro Lijoi's opinion that the ALJ found somewhat persuasive and findings on examination that Plaintiff had negative straight leg raises, intact cranial nerves, normal gait, 5/5 muscle strength, normal sensory examination, normal sensation to pinprick, normal reflexes, and no balance problems. (Tr. 23-24, 655-67.) He was able to lift, carry, and handle light objects; could squat and rise with ease; could rise from a sitting position and had no difficulty getting up and down from the exam table; could walk on heels and toes with mild difficulty; had normal tandem walk; could hop on one foot bilaterally; and could pinch, grasp, and manipulative objects

without difficulty. (Tr. 23-24, 657-58.) He had normal range of motion in the cervical spine, with normal range of motion upon flexion and rotation in the lumbar spine and reduced range of motion upon extension in the lumbar spine. (Tr. 23-24, 658.) He also had normal range of motion in the shoulders, elbows, wrists, hands, hips, knees, and toes. (Tr. 23-24, 658-60.) The ALJ found that Dr. Lijoi's opinion was somewhat persuasive as the ALJ found additional limitations to account for Plaintiff's alleged pain and symptoms considering his MRI. (Tr. 24.)

Dr. Ha's opinions were also inconsistent with the prior administrative medical findings of Drs. Dorothy Linster and Evelyn Jimenez-Medina (which the ALJ found persuasive), both of whom concluded that Plaintiff could perform a reduced range of light work. (Tr. 25, 88-92, 106-12.) Additionally, it is also clear that Dr. Ha's opinions were inconsistent with the robust array of daily activities that the ALJ noted Plaintiff could perform. For example, the ALJ pointed out that "[t]he claimant said he has been his wife's caregiver and over the last two years has done anything she needs, including going to the grocery store, cleaning the home, washing clothes, and taking her to doctor appointments. He also said that he has to help lift her at times as well." (Tr. 21, 48-49.) The ALJ further pointed out that "[h]e does whatever he needs to do for her. He relayed he cooks four course meals. He indicated that he cannot go to work and risk leaving his wife alone." (Tr. 21, 49, 55-56.) Additionally, the ALJ pointed out that "[h]e estimated he can lift about 25 pounds. He said that he takes his own showers and cooks. He reported travelling to Atlanta one time fairly recently for a Mason convention. He said he attends Masonic meetings about once per month, which involves sitting and taking notes. He also has a smart phone and watches television." (Tr. 21, 54-58.) For all these reasons,

the ALJ's assessment of Dr. Ha's opinions is legally correct, well-supported, and susceptible to judicial review.

Plaintiff's arguments to the contrary are not persuasive. Plaintiff contends that the ALJ failed to explain whether Dr. Ha's opinions were inconsistent with the remainder of the record and whether they were supported by Dr. Ha's own findings. (Docket Entry 11 at 11 ("the ALJ's evaluation of Dr. Ha's opinion lacks any form of consistency finding"); (*Id.* at 12 ("The ALJ also erred in her discussion of the supportability factor.").) However, as demonstrated in this Recommendation, that is not the case. As the ALJ discussed in her decision, the record shows that although Plaintiff had back pain, hypertension, and diabetes, he was able to participate in a variety of activities, including caring for his disabled wife, and objective findings on medical examinations were mostly unremarkable. Moreover, the ALJ's decision makes it evident that the findings of the two consultative examiners (Silvestro Lijoi, D.O., discussed above, and Howard Slutzky, Psy. D, discussed below) and four state agency consultants (Drs. Linster and Jimenez-Medina, discussed above, and Drs. Bonny Gregory, M.D. and Sean Sayers, Ph.D, discussed below) were inconsistent with the extreme limitations prescribed by Dr. Ha. In other words, it is clear from the ALJ's discussion of the record in her Decision that Dr. Ha's extreme limitations are inconsistent with the overall longitudinal record.

Beyond this, in making these arguments, Plaintiff also essentially requests that this Court re-weigh the evidence that led the ALJ to find Dr. Ha's opinions unpersuasive and reach a different conclusion.[3] (Docket Entry 11 at 6-9.) However, this Court is not permitted to do

---

[3] Plaintiff asserts that the ALJ "failed to note the spinal imaging" in her decision.

9

so. *See Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (holding that the Court cannot reweigh the evidence but must affirm if the Commissioner's decision is supported by substantial evidence). Substantial evidence supports the ALJ's assessment of Dr. Ha's opinions and the ALJ adequately explained her rationale in accordance with the controlling regulations.[4] Plaintiff's objection has no merit.

### B. Mental Impairments

Plaintiff next contends that "[t]he ALJ's RFC determination is the product of legal error where, after concluding that Plaintiff had various mild mental limitations in functioning, the ALJ failed to incorporate any mental limitations without adequate explanation." (Docket Entry 11 at 8.) This objection is also unpersuasive.

At step two of the sequential evaluation process, the claimant bears the burden of demonstrating a severe, medically determinable impairment that has lasted or is expected to

---

(Docket Entry 11 at 13 referencing Tr. 827-28, 830-31.) However, an ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Comm. of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). And, even setting that aside, the ALJ in this case specifically discussed Plaintiff's imaging at length. (Tr. 22, 828, 831.)

[4] Plaintiff also faults the ALJ for finding Dr. Ha's opinions less persuasive in part because she was not a "spinal specialist." (Docket Entry 11 at 14 ("[T]he ALJ indicated Dr. Ha's opinion lacked credibility because she was not a spinal specialist.").) However, even assuming this was error, it was harmless. As the ALJ adequately explained, and as demonstrated above, Dr. Ha's opinions were both unsupported in and of themselves and also at odds with the remainder of the overall longitudinal record. Consequently, there is no reason to believe that a remand for further administrative proceedings on this issue alone would lead to a different result. Consequently, any error here was at most harmless. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative law or common sense requires us to remand a case in quest of the perfect opinion unless there is reason to believe that remand might lead to a different result.").

10

last for a continuous period of at least twelve months. 20 C.F.R. § 404.1509; *Shrecengost v. Colvin*, No. 14CV506, 2015 WL 5126117, at *3 (W.D.N.Y. Sept. 1, 2015) ("[The p]laintiff bears the burden of establishing a severe impairment at step two by furnishing medical and other evidence of the existence thereof as the Commissioner may require, and will not be considered disabled if such evidence is not provided."). The Act describes "a physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A physical or mental impairment must be established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 404.1521. A statement of symptoms, diagnosis, or medical opinion is not sufficient to establish the existence of an impairment. *Id.* A "[l]icensed physician" or "[l]icensed psychologist" is an "acceptable medical source." 20 C.F.R. § 404.1502(a).

An impairment is "severe" unless it "has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984); *see also* 20 C.F.R. § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); *Brookover v. Saul*, No. 2:20-CV-24-M, 2021 WL 4147075, at *4 (E.D.N.C. June 25, 2021). As such, the "severity standard is a slight one." *Stemple v. Astrue*, 475 F. Supp. 2d 527, 536 (D. Md. 2007). When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme

11

identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into the written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

"[A]n error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps." *Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (finding no reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considered that impairment in subsequent steps) (citations omitted); *see also Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *Garner v. Astrue*, 436 Fed. App'x 224, 225, n* (4th Cir. 2011). However, provided that the claimant has at least one severe impairment, the ALJ must consider the combined effect of all of the claimant's impairments, irrespective of whether they are severe, in determining the claimant's RFC. 20 C.F.R. § 404.1545(e); *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989).

Here, in a determination supported by substantial evidence, the ALJ sufficiently explained why Plaintiff's mental impairments of depression and anxiety were non-severe and would not affect his RFC. (Tr. 18.) More specifically, early in her decision, the ALJ evaluated Plaintiff's alleged depression and anxiety under the four broad functional areas for evaluating mental disorders (the "paragraph B" criteria) after discussing the record as it relates to Plaintiff mental health. (Tr. 18, 25.) More specifically, the ALJ stated that:

The claimant was diagnosed with depression and anxiety and has a history of alcohol and marijuana use. Specifically, the record primarily documents depression and anxiety in the setting of grief following the loss of his grandson in February 2020. (E.g. Exhibits 4F, p.2; 13F, p.5). He reported increased symptoms in March 2020 as well as issues with sleeping. (Exhibit 4F, p.22). On exam, he was cooperative with appropriate mood and affect, and normal judgment. (Exhibit 4F, p.24). In July 2020, he denied anxiety and depression but said he was trying to keep his family together. (Exhibit 4F, p.4). On exam, he was cooperative with appropriate mood and affect. (Exhibit 4F, p.4).

He began receiving some psychotherapy in January 2021. (Exhibit 13F, p.5). Those records document primarily reports of grief over losing his grandson. They also document improvement with treatment as well as sobriety. (Exhibit 13F, p.7). Additionally, he typically had fairly normal mental status, other than tearful affect and sad mood. He was engaged and cooperative, made good eye contact, had normal dress and grooming, was fully oriented, maintained focus, had intact memory, logical thought process, average intellect, and intact insight and judgment. (Exhibit 13F, p.51).

On psychological consultative examination in November 2020, the claimant drove himself to the appointment. He was well groomed, friendly, cooperative, polite, and easily engaged. (Exhibit 8F). He had clear speech, appeared to be in a good mood, and was fully oriented with logical thought process. (Exhibit 8F, p.4). He had adequate recall, could perform simple calculations and serial 3s, and had great insight. He was not diagnosed with a mental impairment. (Exhibit 8F, p.6). The examiner, Dr. Slutzky, opined that the claimant has the capacity to understand, retain, and follow instructions; has the ability to sustain attention to perform simple repetitive tasks; and an exceptional ability to relate to others including fellow workers and supervisors. Additionally, he has the ability to tolerate stress and pressures associated with day to day work activity. (Exhibit 8F, p.6).

As for his substance abuse, the record documents some ongoing alcohol use for which he attended AA, but it includes few objective examples of limitations caused by this impairment. He

13

reported typically drinking with others when watching a game or drinking one or two drinks per day, but not enough to give him a buzz. Similarly, he said he used marijuana briefly for pain relief, but stopped, as it was not helping. Regardless, the record as a whole documents minimal objective findings on examination and treatment.

Accordingly, the undersigned finds the claimant has no limitations in his ability to understand, remember, or apply information or in ability to interact with others. Specifically, he has taken college level courses and on psychological examination, performed simple calculations and serial 3s well. He has not reported any cognitive deficits to any provider. Further, he also had excellent ability to interact with others and has not reported any limitations in this regard. (Exhibit 8F).

The undersigned also finds that he has at most mild limitations in ability to concentrate, persist, or maintain pace and to adapt or manage himself. Specifically, on examination and treatment, there have been no consistent limitations in maintaining attention. He has also presented with adequate grooming and hygiene and has been able to follow the recommendations given by his providers. There is some indication that he would have mild difficulty with increased stressors, such as the example of the death in his family.

As his mental impairments cause no more than "mild" limitations, he does not have a "severe" mental impairment per the Regulations.

(Tt. 18.)

Later in assessing Plaintiff's RFC, the ALJ further stated that:

Dr. Slutzky's examination with the claimant and the fact that he did not find the claimant has any diagnosed mental impairment is persuasive, as it is consistent with the minimal findings from that examination as well as the evidence of record as a whole that primarily documents only some symptoms due to grief over the loss of his grandson. However, he received minimal treatment – including some therapy in 2021 – with few longitudinal objective findings. (Exhibit 8F).

14

(Tr. 25.)

Here, the ALJ pointed to substantial evidence supporting her conclusion that Plaintiff's mental impairments were so minimal as to not require any limitations in the RFC.[5] First, the ALJ correctly observed that in July 2020, Plaintiff denied anxiety and depression. (Tr. 18, 568.) On exam, he was cooperative with appropriate mood and affect. (Tr. 18, 570.)

Second, the ALJ correctly pointed out that in November of 2020 the consultative examiner, Dr. Slutsky, found that Plaintiff did not have a diagnosed mental impairment. (Tr. 25, 650 ("The claimant has denied any psychological, emotional or behavioral difficulties, Therefore, no diagnosis is warranted at this time.").) During the consultative examination, plaintiff had clear speech, appeared to be in a good mood, was fully oriented with a logical,

---

[5] It is well-established that non-severe impairments do not require limitations in the RFC, if (as is the case here for the reasons set forth in this Recommendation) there is substantial evidence and an adequate explanation warranting their omission. *See, e.g.*, *Paris F. v. Comm'r of Soc. Sec.*, No. 20-CV-6724S, 2022 WL 2092904, at *4 (W.D.N.Y. June 10, 2022) (concluding that the exclusion of limitations in the RFC to address claimant's non-severe depression was warranted by substantial evidence); *Smith v. Colvin*, No. CIV-13-617-F, 2014 WL 4384705, at *2 (W.D. Okla. Sept. 3, 2014) ("The ALJ's findings concerning plaintiff's asthma are supported by the medical evidence of record. The ALJ did not fail to consider plaintiff's non-severe impairment of asthma at steps four and five to determine its impact on plaintiff's RFC. Rather, the ALJ found that that non-severe impairment imposed no limitations beyond those that plaintiff's severe limitations imposed. As the magistrate judge observed, a finding at step two that a medically determinable impairment poses *no* restrictions on a claimant's work activities obviates the need for further analysis at step four."); *Krosse v. Colvin*, No. 13-CV-270-PJC, 2014 WL 1342970, at *7 (N.D. Okla. Apr. 3, 2014) ("Contrary to Krosse's argument, the ALJ was not required to find that his nonsevere depression resulted in limitations in his ability to do work-like functions."); *Cooks v. Astrue*, No. 1:10-CV-02714-TWT, 2012 WL 567189, *n.12 (N.D. Ga. Jan. 24, 2012) ("[T]he ALJ's discussion and RFC finding indicate that he did not find that claimant's mental limitations would affect her RFC.") (collecting cases).

goal-directed, and coherent thought process, followed simple written and verbal instructions well, functioned in the high average range of intelligence, and had great insight. (Tr. 25, 648.) The ALJ found this persuasive as it was consistent with the minimal findings from Dr. Slutzky's examination as well as the evidence as a whole that documented some symptoms due to grief over the loss of his grandson, but an otherwise normal mental status examination. (Tr. 25, 650.)

Third, in July 2020, Bonny Gregory, M.D., a state agency physician, reviewed Plaintiff's medical records and found that Plaintiff did not have a severe mental impairment as he had no limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and only mild limitation in adapting or managing oneself. (Tr. 86-87.) In December 2020, Sean Sayers, Ph.D., a state agency psychologist, reviewed Plaintiff's updated medical records and agreed with Dr. Gregory's findings. (Tr. 103-04.) The ALJ found persuasive the prior administrative medical findings by Drs. Gregory and Sayers that Plaintiff did not have a severe mental impairment, and no mental functional limitations. (Tr. 25, 86-87, 103-04.)

Last, as noted earlier in this Recommendation, it is clear from the ALJ's decision that despite his mental impairments, Plaintiff was able to do many daily activities, including providing extensive care for his wife. For all these reasons, the Court concludes that the ALJ adequately explained and supported with substantial evidence her decision not to include any mental limitations in the RFC. Plaintiff's second objection has no merit.

Plaintiff's arguments to the contrary are not persuasive. Plaintiff essentially requests that this Court re-weigh the evidence that led the ALJ to exclude any mental limitations in the RFC. (Docket Entry 11 at 17-18.) However, this Court is not permitted to do so. *See Johnson*, 434 F.3d at 653 (holding that the Court cannot re-weigh the evidence but must affirm if the Commissioner's decision is supported by substantial evidence). Substantial evidence supports the ALJ's assessment of Plaintiff's mild, non-severe mental limitations and her decision to exclude mental limitations from the RFC. Again, this objection has no merit.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion for Judgment (Docket Entry 10) be **DENIED** and the final decision of the Commissioner be upheld.

                /s/ Joe L. Webster
               United States Magistrate Judge

May 16, 2023
Durham, North Carolina

17

Case 1:22-cv-00562-LCB-JLW   Document 14   Filed 05/16/23   Page 17 of 17